INSURANCE CO. OF NORTH AMERICA et al. v. SVENDSEN et al.

(Circuit Court, D. South Carolina. December 3, 1896.)

MARINE INSURANCE—ABANDONMENT—SALVAGE.

The insurer of a vessel's cargo, which has been so damaged by a peril insured against as to become a total loss, or as to make an abandonment inevitable, has such an interest in the salvage of such cargo, even before abandonment, when it is difficult or impossible to discover or deal with the owner, and especially if his remedy is likely to be lost by delay, as to entitle him to come into equity to protect the same, and to assert, as against the master of the vessel or others, his right to be consulted as to the disposition of such salvage.

Theo. G. Barker, for complainants.
Bryan & Bryan, for defendants.

SIMONTON, Circuit Judge. The steamship Michigan, a Norwegian vessel, loaded in the port of Charleston, S. C., with a cargo of cotton. She started on her voyage, but, before she crossed the Charleston bar, it was discovered that her cargo was on fire, and she put back into port. The fire was extinguished, and upon discharging cargo it was discovered that 812 bales of cotton were destroyed by fire, 2,642 bales were seriously injured by water, and 597 bales were not hurt. The cargo was insured in several marine insurance companies, each company having insured separate portions of the cargo; marks and numbers of the bales being specified. The underwriters, through their agent, were promptly on the spot, and sought to advise with the master of the Michigan, and an agent of her owners who was present with him. The underwriters urged that the wet cotton be reshipped and carried to destination, if not on the Michigan herself, then on some other vessel chartered for that purpose. A part of the wet cotton was shipped, but with regard to the remainder, some 1,887 bales, the master and his adviser, the agent of the owners, refused to send forward this cotton, and announced his intention to sell the same at the port of loading, and apply the proceeds towards the expenses to which he had been put. Pursuing that intention, he advertised the cotton for sale. Among the insurers of the cotton on the Michigan was the Insurance Company of North America. This company had insured 3,128 bales,

in the aggregate sum of about $90,000, and, of the bales so insured, 948 were injured by water. A risk insured against having occurred, this insurance company recognized its liability as for a total loss, paid in full the only one of the insured within reach, in the sum of $479.16, before the filing of the original bill, and instituted efforts to discover and pay the others. Meanwhile the Michigan, a foreign vessel, being about to depart from this country, with her master and owners aliens resident abroad, and the certainty that if the master carried out his intent to sell the cotton, and departed, there was no way of reaching him or the owners in any of the courts of the United States, the Insurance Company of North America filed its bill in this court, praying that the master and his agents be enjoined from offering for sale, and from selling, the cotton as he threatened. To this bill a special appearance was entered, making sundry objections to it. Leave was granted to amend the bill. An amended bill was filed, in which, among other things, it appeared that the Insurance Company of North America had been able to reach and settle with parties, owners of the insured cotton, to the extent of $7,500, and was continuing its efforts to reach and pay all the other owners. The defendants filed a demurrer to the bill, challenging the right of the complainant to come into this court. The two grounds of demurrer which at this point demand attention are: (1) That the court had no jurisdiction originally in this action, because the only right of action acquired from the shipper, then had by the insurance company, was under $2,000. (2) Because, on the facts alleged by it, the complainant had a plain, adequate, and complete remedy at law for any right it had.

The main question made in the case is: Has an insurer of cotton which has been subjected to and has been injured by a risk insured against, such a standing in a court of equity as to ask its protection from further loss before a formal abandonment to him on the part of the owner, who is either unknown or out of reach? The course of trade in matters of this character, of which the court will take judicial notice, is this: Cotton being shipped, and bills of lading taken therefor, the shipper draws his bill of exchange against the cotton, attaching thereto the bill of lading and the insurance certificates, and negotiates it in market. When the cotton reaches its destination, the holder of the documents, whoever he may be, presents them, and receives the cotton. If delivery be prevented by any risk insured against, he is entitled to demand and receive the sum insured. It is manifest that in very many, if not in all, cases, it is difficult, if not impossible, to trace the bill of exchange, and to ascertain the holder of these documents. Now, in case of a disaster like the present, in the port of loading, has the insurer, when liability has been fixed by the disaster, any voice in the disposition of so much of the property as has been saved? The question is not whether he can put himself in the place of the assured, and act upon the rights of the assured. To do this, he must be subrogated; he must have actually paid the loss to the assured. Simpson v. Thomson, 3 App. Cas. 284. But the question is whether, under the circumstances stated, the insurer has not himself such right and interest as the master must recognize and respect, and as the court will enforce.

There can be no doubt that, before any disaster has occurred, the insurer cannot interfere. The contract between the insurer and the insured is a personal contract of indemnity, with no lien on or interest in the goods or property insured. But when disaster has occurred, and the liability of the insurer has become fixed, then the insurer has an interest in the salvage of the property saved, and the right to have that applied towards the reduction of his loss. This right he can enforce against the owner, and any agent of the owner. Thus, an interest in the property insured arises for him. Ordinarily he works out his right through the owner, and, in cases in which an abandonment is proper, he accepts the abandonment and becomes the owner. Thus, clothed with the legal and beneficial interest, he can protect or indemnify himself at law, or in this court. But in a case like the present, when it is difficult, if not impossible, to discover or deal with the owner, and thus perfect the abandonment, is there no way of protecting this interest of the insurer in the salvage of this property, especially when, if immediate steps are not taken, his remedy may be lost entirely? The circumstances under which this cotton was placed made it a total loss. As to this damaged cotton, the voyage was broken up when the master refused to reship it, and the proposed sale made this a finality. "The underwriter," says Lord Abinger in Roux v. Salvador, 3 Bing. N. C. 286, "engages that the subject of insurance shall arrive in safety at its destined termination. If, in the progress of the voyage, it becomes totally destroyed or annihilated, or if it be placed, by reason of the perils against which he insures, in such a position that it is wholly out of the power of the assured or of the underwriter to procure its arrival, he is bound, by the very letter of his contract, to pay the sum insured." This brings it within the definition of a "total loss." 2 Arn. Ins. p. 993, § 364. If it be not an absolute total loss, entitling the assured to claim against the underwriter without notice of abandonment, still it is such a case in which an abandonment is inevitable. As this is a question wholly between the insured and insurer, it would seem that the insurer can waive such notice, and treat the loss as total. Indeed, his action in attempting to assume control over the property and give directions concerning it might well be construed as waiver of notice of formal abandonment. But, if this be not so, the effect of abandonment would be to relate back to the moment of the loss, and to vest title in the underwriter as of that date. Coolidge v. Insurance Co., 15 Mass. 346. This being the case, surely the underwriter, who has recognized the loss as total, and is bona fide engaged in settling all claims for it, and is so perfecting his title as to make it relate back from the moment of the loss, has such an interest in the damaged property as entitles him to the protection of the court therein.

It is said, however, that, this ship being in a foreign port, her master represents the owners of the cargo as well as of the ship, and that as such he can finally determine the disposition of the cargo, if the voyage is interrupted or broken up; that in this determination the insurer has no right to interfere. In Howland v. Insurance Co., 131 Mass. 254, there had been a partial loss of a vessel, and a sale of her by the master. The court held that there

was no sufficient proof of such necessity as would justify a sale by the master without notice to the underwriters, and therefore required the owner to make a formal abandonment. On this point the court (Gray, C. J.) says:

"The rule upon this subject is well settled in this commonwealth. In Gordon v. Insurance Co., 2 Pick. 249, a vessel insured in Boston had been sold by auction by the master in San Domingo, after surveyors, who had examined her, and directed her to be unloaded and hove down, had, upon a further examination, reported that, from the damage she had sustained by a gale, and by being driven upon the rocks, she could not be repaired at that place, by reason of the want of materials and the extraordinary cost of making repairs there, without incurring an expense that would exceed the value of the vessel, and therefore they condemned her to be publicly sold for the interest of whom it may concern. The judge presiding at the trial instructed the jury that if the master acted in good faith, and the surveyors conducted themselves honestly in examining the vessel and in reporting their opinion, the sale was justifiable. But the full court held that the certificate of the surveyors, though entitled to weight, was not conclusive, and that the instruction was too favorable to the assured; and Chief Justice Parker, in delivering judgment, said, 'It is certain that a master of a vessel, as such, has no authority to sell the vessel or the cargo, unless in a case of extreme necessity.' Id. 262. In Hall v. Insurance Co., 9 Pick. 466, the court, speaking by that most learned and accurate commercial lawyer, Mr. Justice Putnam, reaffirmed this rule, and added: 'There must be something more than expediency in the case. The sale should be indispensably requisite. The reasons for it should be cogent. We mean a necessity which leaves no alternative; which prescribes the law for itself, and puts the party in a positive state of compulsion to act. The master acts for the owners or insurers, because they cannot have an opportunity to act for themselves. If the property should be kept safely until they could be consulted, and have an opportunity, in a reasonable time, to exercise their own judgment in regard to the sale, the necessity to act for them would cease.' Id. 478. The rule thus laid down has been uniformly upheld by this court in subsequent cases."

In Bryant v. Insurance Co., 13 Pick. 552, the master sold the cargo after a disaster. Action was brought against the underwriter as for a total loss. The court say:

"Plaintiff must prove that the master was authorized thus to terminate the voyage and sell the cargo; for, if he was not authorized to act for the owners and underwriters, it would follow that they were not bound by his acts. There was no suggestion that he had express authority. Plaintiff must maintain that the authority was conferred by law. It would be clear that if the master assumed to act for the owners and underwriters when they were present, or so near as to be consulted in regard to the disposition of the property, his acts under such assumption of authority would not bind them. * * * But if the goods were not perishable or damaged, and might be preserved in reasonable safety until the owners and underwriters could be consulted, he should preserve and guard them, and in such case he would have no more authority to break up the voyage and sell the cargo than a mate or a stranger would have. And notwithstanding he conducted himself honestly, yet, if the other elements which make up this legal necessity are wanting, the owners and underwriters would not be bound."

In that case the sale was held unwarranted, and the underwriters, who had not been consulted, were not bound by it.

In The Sarah Ann, 2 Sum. 206, Fed. Cas. No. 12,342, Mr. Justice Story clearly shows that the underwriter has such an interest as the master must recognize. The libel was filed by the insurer. The learned justice says:

"It is said that, as the sale was made before the abandonment was accepted, it was a sale made by the master as agent of the owners, and that by implication the abandonment admits the necessity for the sale, and adopts and justifies it. I cannot admit the entire correctness of this argument. When a loss takes place for which an abandonment may be made, the master is not exclusively the agent of the original owners of the ship, but he is the agent of those who retroactively be-

come owners of the ship in consequence of that event, if an abandonment is made and is justifiable. The common doctrine is that the master is the agent of all concerned in the voyage, and that he becomes, by relation, the agent of the underwriters, whenever an abandonment has been accepted, from the time of the loss to which that abandonment refers, although the abandonment may not have been offered or accepted until months after the event. So that, in the present case, if libelants have finally accepted the abandonment, the act of the master in the sale is to be treated as his act, as the agent of the libelants [the insurer], and not as the agent of owners."

So Mr. Justice Miller, in Copeland v. Insurance Co., Fed. Cas. No. 3,210, discussing the duties of a master in cases of necessity, recognizes the interest of the underwriter after loss has occurred. He uses this language:

"It is well settled that in cases of necessity, happening during the voyage, the master is by law created the agent for the benefit of all concerned. * * * And, when the injury to the property is so great as to justify a sale, he, from necessity, becomes the agent of the underwriters, as well as of the owner, to effect the sale for their benefit."

It would seem from these authorities that the master cannot exercise any right to sell cargo on an interrupted voyage without consulting the owner or the underwriter, if they be within reach; that the underwriter of goods suffering from a peril insured against, and so injured as to be open to abandonment, has such an interest in the property insured as to make the master agent for him, as well as the owner; that a sale made before abandonment will not bind the underwriter, if improperly made, even if the abandonment be made and accepted after the sale. It follows that the underwriter in the present case had the right to be consulted by the master in the disposition of this damaged cotton; that as that right had not yet ripened into a legal title, for want of formal abandonment, it was not enforceable in a court of law; and that, under the circumstances of this case, it was and is enforceable in this court.